# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM BASSETT, Individually and )
as Parent and Natural Guardian of B.B., )
Minor, JOHN and ASHLEY MILLER, )
Individually and as Parents and Natural )
Legal Guardians of E.G., M.G. & M.M., )
Minors, BRENT and BRIDGET CONKLIN, )
Individually and as Parents and Natural )
Legal Guardians of T.C., Minor,          )          Civil Action No. 3:22-cv-6
JOHN and MICHELLE MCMULLEN,       )          Judge Stephanie L. Haines
Individually and as Parents and )
Natural Legal Guardians of O.M., Minor, )
JEREMY SPONTAK, Individually )
and as Parent and Natural Legal Guardian of )
J.S., Minor, BENNY and TAMMY BUTLER, )
Individually and as Parents and Natural )
Legal Guardians of J.B. & J.B., Minors, )
PATRICK and VALERIE CARFLEY, )
Individually and as Parents and Natural )
Legal Guardians of A.R. & A.C., Minors, )
AARON and ALMA RODGERS, )
Individually and as Parents and Natural Legal )
Guardians of A.R., Minor, HOWARD FORREST, )
Individually and as Parent and Natural )
Legal Guardian of J.F., Minor, SHANNON )
HERRING, Individually and as Parent and )
Natural Legal Guardian of S.H., Minor, and )
SYLVIA NORONHA, Individually and as )
Parent and Natural Legal Guardian of )
S.N., Minor, )
                                                              )
                    Plaintiffs,                     )
                                                              )
          v.                                             )
                                                              )
PENNSYLVANIA INTERSCHOLASTIC )
ATHLETIC ASSOCIATION, INC.,       )
                                                              )
                    Defendant.                     )

1

**OPINION AND ORDER**

This is a civil rights action under 42 U.S.C. § 1983.  Plaintiffs are a group of 17 parents of student athlete wrestlers ("Plaintiff parents" and/or "Plaintiff student athlete wrestlers") who transferred from other schools and/or home school programs in the 2020-21 and 2021-22 school years to attend Bishop McCort Catholic High School, a private Catholic school located in Johnstown, Pennsylvania.  Plaintiff William Bassett ("Bassett") is both a parent of wrestler B.B., and the head wrestling coach for Bishop McCort.

Prior to initiating this action, on December 14, 2021, Defendant Pennsylvania Interscholastic Athletic Association, Inc. ("PIAA") issued a written decision finding Bassett and Bishop McCort engaged in conduct which constituted athletic recruiting under Article VI, Section 9 of the PIAA's By-laws ("Recruiting Rule") (ECF No. 42-8).  The PIAA imposed sanctions on Bishop McCort, its wrestling program, and Bassett by barring Bishop McCort's wrestling program and students from the PIAA post-season championships for the 2021-22 and 2022-23 school years, placing the Bishop McCort athletic program on probation through June 30, 2024, requiring Bishop McCort to report to PIAA District VI on remedial measures no later than February 1, 2022, and disqualifying Bassett from coaching any athletic teams at any PIAA school for a period of two years, effective December 1, 2021.  *Id.* at p. 9.

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) wherein Plaintiffs request the Court to issue a preliminary injunction to enjoin the PIAA from enforcing these sanctions against them.  On January 19, 2022, the PIAA filed a Brief in Opposition to the Motion for Preliminary Injunction (ECF No. 17).  The Court conducted a preliminary injunction hearing on January 26 and 28, 2022 (ECF Nos. 29 and 36), and the parties have filed post-hearing briefs (ECF Nos. 40 and 41).  Notably, Bishop McCort is not a party to this lawsuit,

and the parties agree the sanctions against Bishop McCort and its wrestling program are therefore not being challenged in this action.

Upon consideration of the testimony and evidence in the case, the Court finds Plaintiffs failed to meet their burden to demonstrate they are likely to prevail on the merits of their claims or they will suffer immediate, irreparable harm if the Court does not issue a preliminary injunction. Accordingly, the Court will DENY Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) for the following reasons which constitute the Court's findings of fact and conclusions of law.

## I.    Factual and Procedural Background

The PIAA is a Pennsylvania non-profit voluntary membership corporation composed of public and private high schools in Pennsylvania, with the purpose and function of developing and enforcing rules regulating interscholastic athletic competition among and between its member schools (ECF No. 17 at p. 9). Bishop McCort has voluntarily chosen to join the PIAA and is a PIAA member school located in PIAA District VI, which encompasses the counties of Blair, Cambria, Centre, Clearfield, Clinton, Huntingdon, Indiana and Mifflin. *Id.* at p. 10. As a PIAA member school, Bishop McCort must agree to conduct their interscholastic athletic programs in accordance with the PIAA By-Laws and Constitution. *Id.*

### A. Plaintiff Student Athlete Wrestlers Transfer to Bishop McCort

According to Plaintiffs' Amended Complaint, on November 16, 2020, five of the Plaintiff student athlete wrestlers transferred from the Forest Hills School District to Bishop McCort, one of which was Bassett's son, B.B. (ECF No. 22, ¶49). From December 2020, to January, 2021, three more Plaintiff student athlete wrestlers enrolled at Bishop McCort from home school programs. *Id.* at ¶¶50-51. In February, 2021, Bassett was hired as a STEM teacher at Bishop McCort, and in late-May, 2021, Bassett was hired as the head wrestling coach for Bishop McCort.

3

*Id.* at ¶¶52, 54.  One Plaintiff student athlete wrestler transferred to Bishop McCort during that time period, and five Plaintiff student athlete wrestlers transferred to Bishop McCort after Bassett was hired as the wrestling coach.  *Id.* at ¶¶52-59.

## B.  October 6, 2021 PIAA District VI Committee Hearing

In certain transfer situations, the PIAA By-Laws require schools to complete Athletic Transfer Waiver Request Forms for student athletes.  These forms are completed by the principal from the student athlete's previous school and the principal of the student athlete's new school.  The principal for the new school will then submit the transfer forms to the PIAA home district for that school, in this case District VI, to determine that student athlete's athletic eligibility.  The forms provide space to state the reason for the student athlete's transfer and specifically include a box to check, and space to explain, if the principal believes the student athlete is transferring to his or her school for athletic reasons.[1]  The transfer forms for the Plaintiff student athlete wrestlers indicated they were not transferring for athletic reasons, and accordingly, were all approved by PIAA District VI (ECF No. 22 at ¶62).

The Forest Hills School District requested the PIAA review the circumstances of the transfer of Plaintiff student athlete wrestler A.R., a tenth grader who transferred in August 2021 from Forest Hills to Bishop McCort, because Forest Hills had concerns the transfer was motivated in some way by an athletic purpose (ECF No. 42-6 at p. 4).  On October 6, 2021, the District VI Committee held a hearing to consider A.R.'s athletic eligibility (ECF No. 42-6).  The transcript from that hearing indicates representatives from the Forest Hills School District, Plaintiff Aaron

---

[1] At the November 3, 2021, District VI Committee hearing, Attorney Solomon for the PIAA explained this box should be checked when there is a legitimate belief or suspicion on the part of the principal that there were athletic reasons associated with the transfer.  The mere participation in athletics does not rise to the level of suspicion or concern that athletics is involved in the transfer (ECF No. 42-7 at pp. 32-33).

4

Rodgers, the PIAA's Solicitor, Attorney Gary Jubas, and Bishop McCort's Solicitor, Attorney Gary Vitko, participated in the hearing. *Id.*

At the hearing, Bishop McCort and Forest Hills were advised by William Marshall ("Marshall"), as Chair of PIAA District VI, that during the hearing, Forest Hills would be able to offer any testimony or witnesses related to the transfer of A.R., and then once that testimony was completed, Bishop McCort and its witnesses would have the opportunity to testify and provide evidence related to the matter. *Id.* at p. 5.  The hearing was closed as Marshall noted that only affiliated persons were in attendance. *Id.*

For its presentation at the hearing, the Forest Hills representative provided photographs of A.R. working out in Bassett's home and pictures of A.R. at Bassett's home with members of the Bishop McCort wrestling team. *Id.* at pp. 10-11.  Forest Hills also presented the Committee with two videos of A.R. practicing in Bassett's basement. *Id.*  Forest Hills believed these photos and videos were taken prior to A.R. beginning the process to transfer from Forest Hills to Bishop McCort in August 2021 and thus indicated he transferred for athletic intent. *Id.* at p.10.

For Bishop McCort's presentation at the hearing, Attorney Vitko called Plaintiff Rodgers as a witness at the hearing. *Id.* at p.11.  Plaintiff Rodgers testified at length about his desire to have A.R. attend Bishop McCort in order to take advantage of the academic programs offered by Bishop McCort, in particular, Bishop McCort's ability to have in person learning during the COVID-19 pandemic and for synchronous learning if the students did have to be remote. *Id.* at pp. 15-17.[2]

---

[2] The representatives from Forest Hills clarified the school was in person full time since January 21, 2021, to the end of that school year and full time this year (2021-2022) (ECF No. 42-6 at p. 28).

As to the photographs, Plaintiff Rodgers identified one of the photos showed A.R. attending a July 29, 2021 wrestling camp advertised by Bassett at Divine Mercy, which the PIAA identified as a Bishop McCort feeder school. *Id.* at 25. Plaintiff Rodgers testified the two videos, one of which was dated May 17, 2021, showed A.R. working out at Bassett's house. *Id.* at p. 26. The testimony indicated A.R. was a member of a wrestling club, Ranger Pride Wrestling, which was coached by Bassett and other individuals, including Plaintiff John Miller, and A.R. regularly worked out at The Compound, a private gym owned by Bassett and other individuals. *Id.* at p. 40-41. Plaintiff Rodgers testified A.R. had not wrestled for Bassett in competition since Bishop McCort hired Bassett as the head wrestling coach, but did continue to wrestle for Bassett at The Compound, at Bassett's house, at Divine Mercy, and at Ranger Pride Wrestling events or anything the wrestling club put on. *Id.* at p. 37. Plaintiff Rodgers testified that most of the McCort kids were involved in either Ranger Pride Wrestling or The Compound. *Id.* at 55.

The transcript from the October 6, 2021 hearing indicates the Committee went into an executive session and then reconvened the regular meeting. *Id.* at 57. The Committee then announced it found A.R. to be ineligible, but his ineligibility would be stayed because the Committee was going to schedule a second hearing on November 3, 2021 with Bishop McCort. *Id.* While the Committee deemed A.R. to be ineligible, if the Committee determined recruiting occurred, Bassett would be suspended and A.R. would be automatically eligible under the PIAA By-laws and Constitution. *Id.* at 57-58. Bishop McCort was also placed on immediate probation. *Id.* at 59. Marshall stated attendance at the November 3, 2021 hearing would be required for Bassett, Bishop McCort Principal Tom Smith, and Bishop McCort Athletic Director Ralph DeMarco, and they may bring any other individuals to provide testimony related to the activities of Bishop McCort. *Id.* at 60.

6

At the preliminary injunction hearing, Marshall explained the District VI Committee changed the scope of its inquiry from A.R.'s eligibility to whether recruiting occurred because of the evidence at the October 6, 2021 hearing (ECF No. 38 at pp. 48-49). Particularly, Marshall noted the change in scope was based on Plaintiff Rodgers' testimony that A.R. practiced in Bassett's home at the end of May of 2021 while he was still enrolled at Forest Hills, that multiple students participated in these workouts and practices, and that Plaintiff Rodgers also mentioned to the Committee out-of-state students also participated in these workouts. *Id.* at p. 49.

On October 7, 2021, the District VI Committee sent Principal Smith a letter advising him of the outcome of the hearing and indicated there would be a hearing on November 3, 2021 to determine if there was evidence to support recruiting (ECF No. 42-4 at p. 258). That same day, Marshall sent an email indicating the November 3, 2021 hearing would be to investigate Article VI, Section 9 recruiting (ECF No. 42-5). The email indicates that Bishop McCort Principal Tom Smith, Bishop McCort Athletic Director Ralph DeMarco, and Bassett were required to attend the hearing and stated Bishop McCort may invite anyone who could offer testimony regarding the investigation of recruitment by Bishop McCort or any of its coaches/employees. *Id.* At the preliminary injunction hearing, PIAA witnesses Marshall and Dr. Robert Lombardi, Executive Director of the PIAA, testified that because member schools are more aware of the individuals involved in an issue, and would be in possession of their contact information, the member school has the responsibility to invite the parents and/or other individuals interested in attending a Committee hearing (ECF No. 38 at pp. 48, 117-118).

## C. November 3, 2021 District VI Committee Hearing

At the beginning of the November 3, 2021 hearing, Marshall stated the Committee would determine whether Bishop McCort was in violation of provisions of the Recruiting Rule at Article VI, Section 9 of the PIAA By-laws and the extent to which the provisions of Article 13 of the

PIAA By-laws apply to any conduct shown to have occurred on the part of Bishop McCort and its athletic administration (ECF No. 42-7 at pp. 5-6). Bassett was in attendance, and the parties agreed to proceed with the scope of this hearing. *Id.* at p. 6. The hearing procedure allowed for the Committee members to ask questions of the witnesses and then for Bishop McCort to present evidence and testimony. *Id.*

At the start of the hearing, District VI Committee member Curt Whitesel read a list of seventeen names of student athlete wrestlers who had transferred to Bishop McCort. *Id.* at 9. This list included the names of the Plaintiff student athlete wrestlers in this case. With the exception of one student, Bassett testified all of those student athlete wrestlers were members of Ranger Pride Wrestling, members of The Compound, or wrestled at Bassett's house. *Id.* at 14. Whitesel asked if Bassett had any contact with those students prior to their enrollment at Bishop McCort and Bassett answered, "I coached them." *Id.* The Bishop McCort solicitor Attorney Vitko asked Bassett how he coached those students, and Bassett stated he was a personal trainer at The Compound and a volunteer coach at Ranger Pride Wrestling. *Id.* at p. 16. Marshall specifically asked if Bassett coached Plaintiff student athlete wrestler J.F. at a September 2020 wrestling event, but Bassett indicated he was present at the event to coach his own sons and J.F.'s father was present at that event to coach J.F., though Bassett indicated J.F. may have been competing in the event as a member of the "PA Compound Team". *Id.* at 16. Later in the hearing, Bassett confirmed The Compound rented the Bishop McCort wrestling room to host a wrestling workout weekend a week after he was hired as a teacher at Bishop McCort on February 12, 2021, but while Bassett believed A.R. and his brother were in attendance, he could not confirm if any other student was present at that workout and then transferred to Bishop McCort. *Id.* at p. 80.

Principal Smith was asked whether the Bishop McCort administration was aware of its head wrestling coach holding a workout or practice at the end of May 2021 in his personal home

with athletes who were not Bishop McCort students but then subsequently transferred to Bishop McCort, and Principal Smith indicated the administration was not aware of that event. *Id.* at p. 22. Principal Smith was also asked if he was aware that some of the student athletes Bassett coached or worked with previously, either in Pennsylvania or around the nation, then subsequently sought transfer to Bishop McCort, and Principal Smith indicated he was aware in some cases but that every student who came to tour Bishop McCort indicated that Bishop McCort's COVID-19 education was the reason they were at the school. *Id.* at p. 34-35. He expressed to these parents their children may lose a year of eligibility because of their transfer, but testified the students came for COVID-19 education reasons and he did not believe they were motivated by wrestling. *Id.* Principal Smith testified approximately 87 students transferred to Bishop McCort because of its COVID-19 education opportunities, with 80-90% of those students being student-athletes. *Id.* at 48.

Based on the evidence presented at the November 3, 2021 hearing, the District VI Committee voted to suspend Bassett as head wrestling coach for a period of one year effective November 8, 2021 under the Recruiting Rule, to reinstate the eligibility of A.R., to suspend the Bishop McCort wrestling program from competing in District/State individual and team wrestling championships for a period of no less than 20 months and no greater than 36 months, as well as require Bishop McCort to take rectifying actions, citing a lack of institutional control on the part of Bishop McCort administration (ECF No. 42-4 at pp. 191-2).

### D. December 1, 2021 Board of Appeal

Bishop McCort appealed the District VI Committee's decision to the PIAA Board of Appeal (ECF No. 42-10). Per Bishop McCort's request, the Board of Appeal hearing was open to the public. *Id.* at p. 14. As there was a transcript of the November 3, 2021 hearing, the Board of Appeal limited the presentation to arguments on the findings of the District VI Committee at the

November 3, 2021 hearing (ECF No. 38 at p. 117).  At the Board of Appeal hearing, Attorney

Vitko reiterated Bishop McCort's position that recruiting did not occur under the PIAA By-laws

and the student athlete wrestlers who transferred to the school were not motivated by athletics.

Bassett was present at the Board of Appeal hearing and was represented by counsel.  At the close

of the hearing, the Board held an executive session.  When it returned, the Board indicated it would

sustain the District VI Committee decision but amended the sanctions to ban the Bishop McCort

wrestling program from the post-season for 2022 and 2023, to put Bishop McCort athletics and

their school on probation until June 30, 2024, to require Bishop McCort to report to District VI by

February 1, 2022 as to the conditions of probation, and to suspend Bassett for two years from

coaching any PIAA member school (ECF No. 42-10 at p. 100).

On December 14, 2021, the Board of Appeal issued a Decision Letter to memorialize the

basis of their findings (ECF No. 42-F).  The letter indicates the Board of Appeal found that the

evidence unquestionably demonstrated that Bassett, even if not overtly soliciting enrollments, had

clearly used his positions with The Compound and Ranger Pride Wrestling to engage in recruiting

for an athletic purpose.  The Board of Appeal specifically noted: A.R. and other Bishop McCort

wrestlers worked out in Bassett's basement prior to his transfer; A.R. was coached two nights a

week by Bassett and was a member of Ranger Pride Wrestling before he transferred to Bishop

McCort; Bassett, through Ranger Pride Wrestling, sent out an invitation to a broad range of

wrestlers to attend a wrestling camp at a Bishop McCort feeder school, Divine Mercy, after he was

hired as the head wrestling coach at Bishop McCort; and Bassett attended and coached at the event.

*Id.* at ¶¶2-9.

The Board of Appeal also determined from the testimony at the November 3, 2021 hearing

that one week after being hired as a teacher at Bishop McCort, Bassett, through The Compound,

hosted a strength and wrestling workout weekend at Bishop McCort's wrestling room, and a

number of students who participated in the event then transferred to Bishop McCort. *Id.* at ¶18. The Board of Appeal noted that, prior to 2020, Bishop McCort only had 5 wrestlers total in grades 9 through 12, and often had to forfeit matches due to not having a sufficient amount of team members. *Id.* at ¶¶9, 21, and 24.  There were now 15 wrestlers in grades 7 and 8, almost all of whom recently transferred to the school after being coached or trained elsewhere by Bassett. *Id.* This number of transfers included several students who Bassett coached and/or trained that transferred to Bishop McCort after Bassett was hired as head wrestling coach.  The Board of Appeal also found the Bishop McCort administration lacked the appropriate institutional oversight to address the inherent challenges presented by Bassett and his outside activities with The Compound and Ranger Pride Wrestling, as well as relationships with wrestlers not enrolled at Bishop McCort who then transferred to Bishop McCort. *Id.* at ¶22.

### E. Preliminary Injunction Hearing

On January 7, 2022, Plaintiffs initiated this action by filing a complaint (ECF No. 1) against the PIAA, and on January 10, 2022, they filed the instant Motion for Preliminary Injunction (ECF No. 2) and Brief in Support (ECF No. 4).  On January 19, 2022, the PIAA filed its Brief in Opposition to the Motion for Preliminary Injunction (ECF No. 17).  Following a status conference with the parties (ECF No. 13), the Court scheduled two days to conduct a hearing on Plaintiffs' Motion for Preliminary Injunction (ECF No. 14).  The hearing was initially scheduled to take place on January 25-26, 2022, but based on the availability of the parties and witnesses, the Court granted the PIAA's request to reschedule the hearing for January 26 and 28, 2022 (ECF No. 16). Prior to the hearing, the parties agreed Bishop McCort is not a party to this matter, and thus, the sanctions against Bishop McCort and its wrestling program are not at issue in this matter.

During the hearing, the Court accepted testimony on behalf of Plaintiffs from several wrestling coaches from other school districts, specifically, witnesses Dave Crowell as Head Wrestling Coach for Nazareth Area High School, Ben Clymer as Head Wrestling Coach for Faith Christian Academy, Jeff Karam as Head Wrestling Coach for Bethlehem Catholic High School, Matt Veres as Head Wrestling Coach for Notre Dame Green Pond High School, and Kyle Swyczek as Head Wrestling Coach for Waynesburg Central High School. Plaintiffs' counsel questioned these coaches regarding the number of transfers in their school districts for the 2020-21 and 2021-22 school years, whether those coaches had involvement in extracurricular wrestling clubs or clinics, and whether any students transferring to their schools were deemed ineligible by the PIAA. Plaintiffs also called Arizona State University Assistant Wrestling Coach Lee Pritts to testify as to the significance of participation in the PIAA post-season championships and the possible loss of college scholarships and name, image, and likeness ("NIL") endorsements from not participating in the PIAA post-season championships.

Plaintiff parents Ashley Miller and Howard Forrest also testified. Plaintiff Miller's three sons are wrestlers who transferred to Bishop McCort in November 2020, prior to Bassett being hired as a STEM teacher or wrestling coach. She testified that she transferred all five of her children to Bishop McCort from Forest Hills because her eldest son had been subjected to a racial attack, which was alluded to on the PIAA transfer paperwork, and it no longer felt safe for her children to be at Forest Hills (ECF No. 39 at p. 165). Plaintiff Miller specifically denied that her sons were recruited to come to Bishop McCort to wrestle. *Id.* at p. 168. Plaintiff Miller indicated her husband is first cousins with Basset and affiliated with Ranger Pride Wrestling. *Id.* at pp. 167, 170. On cross examination, Plaintiff Miller was asked about social media posts involving her son with pictures of all the wrestlers who had come into the Bishop McCort program, under the tag

"A Storm is Coming", and she testified some of the young boys made those social media posts. *Id.* at 175.

Plaintiff Forrest testified his entire family, with the exception of a daughter who attended college in North Carolina, moved from North Carolina to the Johnstown, Pennsylvania area in order to be closer to their daughter who attended school at Mount Aloysius. *Id.* at p. 179. His son, J.F., transferred to Bishop McCort in July, 2021 after Bassett was hired as the wrestling coach, and Plaintiff Forrest testified his son knew Bassett and other individuals from Ranger Pride Wrestling before he enrolled at Bishop McCort. *Id.* at 190. Plaintiff Forrest testified though, that while his son was recruited by Wyoming Seminary for wrestling, the family instead chose to attend Bishop McCort for the COVID-19 education opportunities and to be near their daughter at Mount Aloysius. *Id.* at p. 181-182. He stated the move was not materially motivated by athletics. *Id.* Plaintiffs Miller and Forrest were the only parents to testify at the preliminary injunction hearing.

From the defense, the Court heard testimony from William Marshall, Chair of PIAA District VI and Superintendent of Penn Cambria School District, Dr. Robert Lombardi, Executive Director of the PIAA, and Robert Hartman, Jr., Vice-President of the Board of Directors of the PIAA and Chair of PIAA District XI. These witnesses offered testimony relating to the October 6, 2021 and November 3, 2021 Committee hearings and the December 1, 2021 PIAA Board of Appeal hearing, as well as the basis for the PIAA's determination to sanction Bishop McCort, its wrestling program, and Bassett.

Relating to the nature of the recruiting issues in this case, Dr. Lombardi testified the Recruiting Rule at Article VI, Section 9 of the PIAA's By-laws provided a non-exhaustive list of examples to highlight when prior contact between a coach and incoming student would be inappropriate (ECF No. 38 at p. 113). The PIAA points to the following paragraphs from this list

in their briefing, which were also referenced in the PIAA's December 14, 2021 Decision Letter

(ECF No. 42-8):

> 3.        Using AAU or other amateur athletic Coaches to steer students to a particular school.
>
> ***
>
> 12. Participation by a student in non-school athletics (i.e. AAU, American Legion, club settings, etc.) on a Team that is affiliated with any school other than the school which the student attends, or attended the prior year, followed by a Transfer by that student to the affiliated school. A Team affiliated with a school is one that is organized by and/or coached by any member of the Coaching staff at, or any other person affiliated with, that school; and/or on which the majority of the members of the Team (participants in Practice and/or competition) are students who attend that school.
>
> 13. Organizing, leading, or participating in a sports camp or clinic or speaking at a sports banquet or function are not, by themselves, considered to be recruiting for an athletic purpose. However, if the Athletic Personnel involved in the camp, clinic, or speech use the opportunity to promote their own school, such effort may be deemed to constitute recruiting for an athletic purpose.

(ECF No. 17 at p. 13).

The PIAA By-Laws also state schools are expected to engage in oversight, monitoring and

investigation of the connections between coaches and the incoming transferring students whom

they coached to avoid violating of the Recruiting Rule in these instances (ECF No. 17 at p. 14).  If

a school is determined to have engaged in athletic recruiting, it is, pursuant to Section 9C of Article

VI, subject to any of the penalties described in Article XIII, Penalties, of the PIAA By-Laws.

These possible penalties include, but are not limited to, school and/or team suspension from PIAA,

bans from postseason, probation, and coaches found to have engaged in such conduct are

automatically disqualified from coaching a PIAA member school for at least one year.  *Id.*

Dr. Lombardi explained the PIAA By-Laws provide the punishment for recruiting is levied

upon the member schools, teams, and/or the coaches found to have engaged in recruiting (ECF

No. 38 at pp. 113-115).  The student athletes who were recruited are not deemed to be ineligible

for athletic competition, but when a team is sanctioned relating to regular or post-season competition, even in sports like wrestling which include individual championships, student athletes will be unable to participate in that season or post-season because the student athletes participate and qualify for such competition by representing their PIAA member school. *Id.*

On February 2, 2022, the parties filed post-hearing briefs (ECF Nos. 40 and 41). In their brief (ECF No. 41), Plaintiffs mainly argue the evidence at the hearing and in the underlying record demonstrates they are likely to succeed on the merits of their claims and they will suffer immediate and irreparable harm if a preliminary injunction is not issued. The PIAA contends in its brief (ECF No. 40) Plaintiffs have failed to meet their burden to satisfy either of these threshold factors, and Plaintiffs are therefore not entitled to such injunctive relief. This matter is ripe for disposition.

## II.    Standard of Review

"[T]he grant of injunctive relief is an 'extraordinary remedy which should be granted only in limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). To prevail, the Plaintiffs must demonstrate that: (1) they are likely to succeed on the merits of their claims, (2) they are likely to suffer irreparable harm without relief, (3) the balance of harms favors them, and (4) relief is in the public interest. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). "All four factors should favor relief before an injunction will issue." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992) (citation omitted). However, before reaching factors three (3) and four (4), the moving party must first satisfy its burden with respect to factors one (1) and two (2). If a plaintiff fails to satisfy this burden, this is the end of the inquiry, and a preliminary injunction will not issue. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017).

### III.   Analysis

For the reasons set forth below, the Court finds Plaintiffs have failed to meet their burden. Plaintiffs have not demonstrated they are likely to succeed on the merits of their claims or that they will suffer immediate and irreparable harm, and the Court must deny their request for a preliminary injunction against the PIAA.

#### A. Likelihood of Success on the Merits

A showing of the likelihood of success on the merits is a "gateway factor", which the plaintiff must establish with the required specificity. *Reilly*, 858 F.3d at 179. Plaintiffs' Section 1983 claims at Counts I, II, and III of their Amended Complaint (ECF No. 22) assert the PIAA has violated their Fourteenth and First Amendment rights, specifically, their Fourteenth Amendment rights to due process, their First Amendment rights to freedom of association, and their Fourteenth Amendment rights under the Equal Protection Clause. As to Plaintiffs' state law claims, Plaintiffs allege the PIAA violated Section 1604-A(b)(12) of the Pennsylvania Public School Code at Count IV and include a claim of defamation at Count V. Ultimately, Plaintiffs have not shown that their chance of success is "significantly better than negligible," *Reilly*, 858 F.3d at 179, as to any of their claims.

#### 1. Due Process Claims

The parties do not dispute that the PIAA is a state actor for section 1983 purposes. *See Rottmann v. Pa. Interscholastic Ath. Ass'n*, 349 F. Supp. 2d 922, 926 (W.D. Pa. 2004). Plaintiffs assert their right to due process has been violated as the PIAA did not provide the Plaintiff parents with notice of the October 6, 2021, November 3, 2021, and December 1, 2021 hearings and the sanctions imposed as a result of those hearings were directed at the student athlete wrestlers.

Regarding the alleged lack of notice, as a practical matter, the record reflects Bishop McCort was instructed by the PIAA to invite anyone to testify on their behalf, but Bishop McCort chose not to have any Plaintiff parents testify at the November 3, 2021 hearing or attend the December 1, 2021 Board of Appeal hearing.  Further, at the preliminary injunction hearing, Dr. Lombardi testified that the two-year post-season ban was directed towards the Bishop McCort wrestling program (ECF No. 38 at p. 134). There is no dispute Bishop McCort was represented by counsel and fully participated at the October 6, 2021, November 3, 2021, and December 1, 2021 hearings, and notably, is not participating as a party in this matter to contest the sanctions against its wrestling program.  The record clearly reflects the subject of the November 3, 2021, and December 1, 2021 hearings was Bassett's potential recruiting and Bishop McCort's lack of oversight, not the athletic eligibility of any individual student.  Though the December 14, 2021 Decision Letter states the wrestling program "and its students" are subject to the two-year post-season ban, Dr. Lombardi testified student athlete wrestlers must be associated with a member school wrestling program in order to compete in the PIAA post-season championships (ECF No. 38 at p. 114).  Therefore, the sanction against the Bishop McCort wrestling program acts to prevent any student athlete wrestlers who attend Bishop McCort from competing in the PIAA post-season for the next two years.  *Id.*  Dr. Lombardi testified that Bishop McCort, its wrestling program, and Bassett were sanctioned, not any individual student.  *Id.* at pp.115, 127.

The Plaintiff student athlete wrestlers were not found to be athletically ineligible for any period of time, they are fully able to participate in regular season wrestling, and these individuals have not been "suspended from wrestling" or had their eligibility rescinded, as Plaintiffs repeatedly misstate (ECF No. 41 at ¶61).  There is no dispute the District VI Committee and Board of Appeal make several references to the circumstances of individual students, particularly their connections

17

to Bassett in relationship to when they transferred to Bishop McCort. However, Plaintiffs' recurring argument the PIAA has targeted these students and imposed a two-year post-season ban "on individual students" is an absolute mischaracterization of the sanctions. The PIAA's filings and the testimony at the preliminary injunction hearing make it abundantly clear the PIAA imposed sanctions against Bishop McCort, its wrestling program, and Bassett, not on any individual students. The inclusion of the words "and its students" appears to be a distinction without a difference.[3]

Moreover, Plaintiffs will not succeed in their due process claims as the Third Circuit, and Pennsylvania district and state courts, have uniformly ruled Plaintiffs' do not have a fundamental right to participate in athletics, let alone a right to participate in post-season competition. *See Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 344 (3d Cir. 2004) ("no property interest exists in participation in extracurricular activities, including sports, as a general principle, under the United States Constitution"); *See Chapman v. Pa. Interscholastic Ath. Ass'n*, 2014 U.S. Dist. LEXIS 84299, at *21 (M.D. Pa. June 18, 2014) ("What [p]laintiff essentially argues is that the right to guide a child's education also includes the right to be free from any state restrictions as to when and where her child may play interscholastic sports. However, no court has declared that

---

[3] Though not addressed by Plaintiffs, Bishop McCort's absence from this suit presents a significant, if not fatal, impediment to Plaintiffs' requested relief as to the two-year PIAA post-season championship ban. In their injunction, Plaintiffs seek to enjoin the PIAA from acting in any way to prohibit the Plaintiff student athlete wrestlers from participating in post-season interscholastic wrestling **as members of the wrestling team at Bishop McCort** during the 2021-2022 and 2022-2023 season (emphasis added). However, a student athlete must be associated with a member school to participate in PIAA post-season championships, and it is without dispute that the two-year PIAA post-season ban against Bishop McCort is not being challenged in this lawsuit. Even if the Court granted Plaintiffs their requested relief, this Court's ruling would not extend to overturn the sanctions against Bishop McCort and its wrestling program. The student athlete wrestlers cannot compete independently from the Bishop McCort wrestling program in PIAA post-season wrestling events.

such a right exists, and such a finding would be directly contrary both to the Third Circuit's holding in *Angstadt* and to the settled law that there is no constitutionally protected right to play sports."); *Palmer v. Merluzzi*, 868 F.2d 90, 96 (3d Cir. 1989) ("Participation in extracurricular activities is not a fundamental right.").

Plaintiffs' due process argument is largely focused on the rights of the Plaintiff parents and Plaintiff student athlete wrestlers. As to Bassett, the basis of his due process claim is not clear from the filings or from the argument at the preliminary injunction hearings and Bassett did not testify at the preliminary injunction hearing. The record reflects Bassett attended and fully participated in the November 3, 2021 hearing and the December 1, 2021 Board of Appeal, where he was also represented by counsel, and therefore, it does not appear he will succeed in claiming the PIAA deprived him of the right to due process.

## 2. First Amendment Claims

Plaintiffs also contend the PIAA sanctions denied, interfered with, and/or infringed upon Plaintiffs' First Amendment rights to freedom of association by retaliating against them for their choices to attend Bishop McCort, a private Catholic School, on the basis of its COVID-19 education and for being successful at wrestling. Plaintiffs also contend they are being punished for their affiliation with Ranger Pride Wrestling and The Compound because the PIAA based its decision on their attendance and membership with these programs prior to their transfer to Bishop McCort.

In contrast, the PIAA contends Plaintiffs' right to association has not been limited in any way. The PIAA correctly states all students remain free to attend Bishop McCort, wrestle during the regular season, compete in other sports for Bishop McCort, and continue to be a part of Ranger Pride Wrestling and The Compound.

The Court finds the PIAA sanctions do not prevent the Plaintiffs from attending the private Catholic school of their choosing based on the academic program offered, and moreover, Plaintiffs have not identified a cognizable First Amendment right violated by the PIAA sanctions. *See Chapman v. Pa. Interscholastic Ath. Ass'n*, 2014 U.S. Dist. LEXIS 84299, at *11 (M.D. Pa. June 18, 2014) (finding the Constitution is not offended by high school athletics eligibility requirements that rule a student is ineligible for interscholastic sports at the private religious school of their choice).

In this case, no individual students were sanctioned by the PIAA, let alone sanctioned as a result of their choice for a religious education, and the PIAA's By-Laws and Constitution are uniformly applied to all member schools, regardless of the school's religious affiliation. Additionally, the Bishop McCort wrestling program as a whole is subject to the PIAA two-year post-season championship ban, even those wrestlers who may not be deemed "elite" or have no affiliation with Ranger Pride Wrestling or The Compound.   Plaintiffs have thus failed to demonstrate a likelihood of success on their First Amendment claims.

### 3.  Equal Protection Clause

Equal protection claims, when they do not involve a suspect class or fundamental right, will be governed by the "rational basis test." *Moreland v. Western Pennsylvania Interscholastic Athletic League*, 572 F.2d 121, 124 (3d Cir. 1978).  Both parties appear to agree that the rational basis test applies to the Plaintiffs' equal protection claim.  Under this test, government action will be upheld so long as it rationally furthers some legitimate, articulated state purpose. *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).  The rational basis test is difficult to overcome, as "it has long been settled that the Equal Protection Clause is offended only by laws that are invidiously discriminatory—only by classifications that are wholly arbitrary or

capricious." *Id.* (Stewart, J., concurring).  That is, under the rational basis test, "if the justification for the disparate treatment is neither arbitrary nor capricious, but grounded on some reasonable policy, there is no denial of equal protection of the laws." *Pfender v. Beard*, 2011 U.S. Dist. LEXIS 15309, at *3 (M.D. Pa. Feb. 16, 2011), *aff'd sub nom. Pfender v. Sec'y Pennsylvania Dep't of Corr.*, 443 Fed. Appx. 749 (3d Cir. 2011) (citing *Jamieson v. Robinson*, 641 F.2d 138, 142 (3d Cir.1981)).  A decision is arbitrary and capricious when the decision-makers willfully disregard evidence or testimony which someone of reasonable intelligence "could not possibly have avoided in reaching" their decision. *A.M. v. Pa. Interscholastic Ath. Ass'n*, Civil Action No. 1:20-cv-290-SPB, 2020 U.S. Dist. LEXIS 182145, at *9 (W.D. Pa. Oct. 1, 2020) (internal citation omitted).

As in their due process claim, the Plaintiff parents have failed to identify a fundamental right underlying their equal protection claim.  The PIAA correctly cites the situation is analogous to the circumstances in *Moreland v. W. Pa. Interscholastic Ath. League*, 572 F. 2d 121 (3d Cir. 1978).  In that case, a high school was sanctioned by the Western Pennsylvania Interscholastic Athletic League ("WPIAL") for using players on its football and basketball teams in the 1973 and 1975 seasons who were ineligible due to absenteeism. *Id.* at 123.  The school district accepted the WPIAL's sanctions, which included a two-year ban from post-season competition for the football and basketball teams. *Id.*

Basketball player Floyd Moreland filed suit against the WPIAL, seeking injunctive relief under Section 1983.  At the time Moreland enrolled at the high school, and when he entered the basketball program for the 1976-77 season, the team was still suspended from post-season competition, even though no members of the 1976-77 basketball team were involved in the violations. *Id.*  The district court noted Moreland was an above average player and competition in

the post-season attracts college scouts and coaches. *Id.* However, the district court found the rule on attendance at class and the rule permitting suspension of a school for past violations of the eligible player rule both served a legitimate interest in educational values and dismissed Moreland's equal protection claim. Though the sanctions had the result of preventing innocent players from post-season competition, no equal protection violation existed ("[t]he sanction of suspending a successful team from post-season tournament competition visits powerful social and political pressures upon those officials. Thus, the rules serve a noteworthy societal and moral purpose. It is regrettable, however, that enforcement of the rule sanctioned upon schools for serious breaches of the rules visits tangible deleterious effects upon certain innocent players..."). *Id.* at 126. The district court's finding was affirmed by the Third Circuit, though the Third Circuit remanded the matter to allow the WPIAL's motion to dismiss to be converted to one for summary judgment as the district court considered matters outside of the pleadings in reaching its ruling. *Id.* at 127.

As in *Moreland*, this Court finds the PIAA's Recruiting Rule is reasonably related to a legitimate state interest to prevent recruiting of students for athletic purposes, and the PIAA's decision is grounded in its enforcement of the Recruiting Rule. The Plaintiff student athlete wrestlers are regrettably not able to compete in the PIAA post-season championships for the 2021-22 and 2022-23 school years because of the ban against the Bishop McCort wrestling program, but Plaintiffs' equal protection rights have not been violated.

When considering the likelihood of success of a claim against the PIAA, the Court must keep in mind the long-standing principle in Pennsylvania jurisprudence that the court's role in such a dispute is narrow. *Dunmore Sch. Dist. v. Pa. Interscholastic Ath. Ass'n*, 505 F. Supp. 3d 447, 466 (M.D. Pa. 2020); *see also, Revesz ex rel. Revesz v. Pennsylvania Interscholastic Athletic*

*Ass'n, Inc.*, 798 A.2d 830 (Pa. Commw. Ct. 2002) ("[t]he general rule and guiding legal principle with respect to high school athletic associations is one of judicial noninterference"). Precedent establishes that, in the absence of mistake, fraud, collusion or arbitrariness, the decisions of such associations will be accepted by the courts as conclusive. *See Harrisburg School District v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 502-03, 309 A.2d 353 (1973). Such associations may adopt reasonable rules which will be deemed valid and binding upon the members of the association unless the rule violates some law or public policy. *Rottmann v. Pa. Interscholastic Ath. Ass'n*, 349 F. Supp. 2d 922, 933 (W.D. Pa. 2004). It is not the responsibility of the federal courts to inquire into the expediency, practicability, or wisdom of those regulations. *Id.*

Plaintiffs argue the PIAA arbitrarily disregarded that the majority of the transfers occurred before Bassett was hired as the STEM teacher and the head wrestling coach for Bishop McCort. Though the District VI Committee and Board of Appeal received evidence relating to the total number of wrestlers who transferred into Bishop McCort, and the record shows they considered that evidence, Marshall testified the Committee focused on the student athlete wrestlers who transferred to Bishop McCort after Bassett had been hired as a teacher at Bishop McCort (ECF No. 38 at p. 59). Indeed, the recruiting issue first came to the PIAA's attention over the transfer of A.R. because he had been coached by Bassett and then transferred to Bishop McCort after Bassett was hired as the wrestling coach.

Plaintiffs also repeatedly contend the PIAA's findings were based on "hearsay" and observations made outside the hearing process but fail to identify any hearsay or extraneous statement relied on by the PIAA. Instead, Plaintiffs acknowledge in their post-hearing brief the evidence before the District VI Committee and Board of Appeal demonstrated: (1) student athletes

interacted with Bassett at his private gym, which included attending events and workouts at his home; (2) Bassett was a volunteer coach for Ranger Pride Wrestling; (3) Basset sent out invitations to wrestlers who were not Bishop McCort students for a wrestling clinic held at a Bishop McCort feeder school after being hired as a wrestling coach for Bishop McCort; and (4) student athletes who had been coached by Bassett through Ranger Pride Wrestling, attended The Compound, or attended a wrestling clinic then transferred to Bishop McCort's wrestling program thereafter (ECF No. 41 at p. 25). At least five of these student wrestlers came to Bishop McCort after Bassett was hired as the wrestling coach for Bishop McCort (ECF No. 41 at ¶42). This evidence alone indicates the PIAA's findings were neither arbitrary nor capricious (ECF No. 42-8).

Further, though Plaintiffs rely heavily on the testimony of coaches from other wrestling programs around the state, there was no testimony indicating a similar number of student athlete wrestlers transferred to those programs after having previous contact with those coaches, let alone that numerous incidents of prior contact/recruiting had been raised to, and approved of, by the PIAA. The coach for Waynesburg Central High School denied ever having any prior contact with the three out-of-state wrestlers who transferred there over the last two seasons before their transfer (ECF No. 38 at p. 22). While Plaintiffs represent Faith Christian Academy's high school wrestling roster was comprised largely of transfer students (ECF No. 41 at ¶103), the coach for that school testified no one transferred during their high school start and could not give conclusive testimony as to any of the students Plaintiffs claimed transferred into the school from public school districts, ultimately testifying there were no transfers on the current roster (ECF No. 39 at pp. 97-98, 103).

The Faith Christian Academy coach indicated he ran a private wrestling club using the Faith Christian Academy facilities, which included wrestlers from outside the school, but that none of those wrestlers subsequently transferred to Faith Christian Academy. *Id.* at pp. 101-102, 111.

The coach for Notre Dame Green Pond High School similarly testified he also ran a private wrestling club in addition to coaching wrestling for that school, and he did not have any students he coached at his club or through a clinic who then transferred to his school. *Id.* at pp. 142-143. Plaintiffs emphasize the Notre Dame Green Pond coach's testimony that, without transfers, there would be no wrestling program (ECF No. 41 at ¶107), but fail to mention the coach also testified the school does not have a sending school district or feeder school, so essentially every single student, either on the wrestling team or enrolled in the school, would be considered a transfer student (ECF No. 39 at p. 143).

Indeed, every wrestling coach Plaintiffs called as a witness uniformly testified, some emphatically so, that they did not privately coach or train student athletes who then transferred to their wrestling programs. In the event they had prior contact with a student athlete who then sought to transfer to their school, they would alert their athletic director or principal. In this case, the record before the PIAA indicated Bassett previously coached or trained several student athlete wrestlers who then enrolled at Bishop McCort after he was hired as the head wrestling coach, that he did not alert the athletic director or Principal Smith about this issue, and further, that Bishop McCort administration was otherwise aware of the possibility of the prior relationship between Bassett and these students but chose not to look into the issue. In the Court's view, Bassett's previous coaching and training relationships with the numerous transferring wrestlers, and his complete failure to advise the athletic director and/or Principal Smith of these relationships, coupled with Bishop McCort's neglectful or intentional ignorance to what was patently obvious, are all clearly indicative of athletic recruiting, as well as willful blindness by the Bishop McCort administration in their oversight responsibilities, as the PIAA reasonably determined.

Though the Plaintiff parents all contend they did not enroll their children at Bishop McCort for athletic purposes, the Recruiting Rule looks to the actions of Bassett and oversight of Bishop McCort.  Even considering the testimony from the other coaches, Plaintiffs have failed to show the PIAA acted arbitrarily in issuing sanctions against Bishop McCort, the wrestling program, and Bassett.  While there was no evidence before the District VI Committee or Board of Appeal showing Bassett directly emailed or texted the Plaintiff parents to coerce them to enroll their student athlete wrestlers at Bishop McCort, the PIAA's Recruiting Rule does not require such evidence and the record before the PIAA appropriately and abundantly supports its findings.

Plaintiffs also rely on the cases *Pa. Interscholastic Athletic Asso. v. Geisinger*, 474 A.2d 62 (Pa. Commw. 1984) and *Boyle by Boyle v. Pa. Interscholastic Ath. Ass'n*, 676 A.2d 695 (Pa. Cmwlth. 1996) to contend the PIAA's determination in this case was arbitrary and capricious.  In *Geisinger*, the Pennsylvania Commonwealth Court affirmed the trial court's grant of a preliminary injunction against the PIAA's determination that certain students were athletically ineligible because of their excessive absences from their previous school.  In *Boyle*, the Pennsylvania Commonwealth Court affirmed the trial court's grant of injunctive relief based on its determination the PIAA's decision of the eligibility of a student was based on opinions and rumors from unnamed sources in the student's former school's athletic department.

Unlike *Geisinger* and *Boyle*, in this case, the PIAA's sanctions were not based on unsubstantiated information, unnamed sources, or are in disregard to the record before it.  To the contrary, the PIAA specifically enumerated the facts and evidence it relied on in reaching its decision to impose the sanctions.  Further, at the preliminary injunction hearing, the PIAA's representatives precisely and persuasively testified as to the factual basis for the sanctions imposed

against Bishop McCort, its wrestling program, and Bassett. The record does not support a finding that the PIAA's decision in this case was arbitrary, capricious , or discriminatory.

### 4. Pennsylvania State Law Claims

At Count IV, Plaintiffs contend the two-year PIAA post-season ban against the Bishop McCort wrestling program violates their right to education and school choice rights to attend a private Catholic school under Section 1327 of the Pennsylvania Public School Code, 24 P.S. §13-1327(b)(2). Plaintiffs argue the transfers of the Plaintiff student athlete wrestlers to Bishop McCort were not motivated by athletics, emphasizing the desirability of the academic opportunities offered by Bishop McCort during the COVID-19 pandemic.

As to academic education, the record reflects the Plaintiff student athlete wrestlers are fully able to participate in every aspect of academic and extracurricular life at Bishop McCort, with the sole exception being participation in the PIAA post-season championship for the next two years.[4] The inability to participate for one to two years in PIAA post-season competition does not infringe the Plaintiff parents' rights to choose where their children attend school under federal or state law. Moreover, Plaintiffs have not pointed to a single case in which a court held that a student possesses a state or federal right to participate in extracurricular activities under similar circumstances.

Plaintiffs also have failed to demonstrate the PIAA violated any part of Act 91. Of relevance to this action, Act 91 instructs the PIAA to "adopt rules intended to discourage its member school entities from recruiting athletes." 24 P.S. §1604-A(12). The PIAA's Recruiting Rule provides for sanctions to be imposed against member schools and coaches, but Plaintiffs argue the PIAA's sanctions penalize individual students who may have been the subjects of

---

[4] As referenced below, the majority of Plaintiff student athlete wrestlers will only miss one year of PIAA post-season championships.

recruiting, identify individual student athletes as subjects or targets of recruiting, and place the burden of proof of a non-breach of the recruiting rules on students or families, citing 24 P.S. §16-1604-A(b)(12)(i)-(iii) (ECF No. 41 at ¶¶17-18).   Again, Plaintiffs' arguments are based on fundamental misunderstandings of the PIAA procedures and misstatements of the record.   The two-year PIAA post-season championship ban is imposed on the Bishop McCort wrestling program, and the two-year coaching ban is imposed on Bassett.   These sanctions thus conform with Act 91's directive to the PIAA.[5]

### B.   Irreparable and Immediate Harm

"In order to demonstrate irreparable harm[,] the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).   "The preliminary injunction must be the only way of protecting the plaintiff from harm." *Id.*

The Plaintiff student athlete wrestlers assert the two-year PIAA post-season ban causes them to suffer immediate and irreparable harm because they will lose scholarship opportunities and name, image and likeness ("NIL") endorsements they may receive at college.   As a preliminary issue, though Plaintiffs' case focused on the impact of the two-year PIAA post-season ban generally, the Court notes the majority of the student athlete wrestlers will only lose one year of PIAA post-season competition.   The 8th grade Plaintiff student athlete wrestlers will only lose one year of eligibility as 8th graders do not have PIAA post-season competition.   The 12th grade

---

[5] Plaintiffs do not appear to directly request injunctive relief as to their defamation claim, but even if they had, the Third Circuit has determined injunctive relief is not an appropriate remedy for such a claim. *See Tarugu v. Journal of Biological Chemistry*, 478 F. Supp. 3d 552, 559 (W.D. Pa. 2020) ("[t]he Third Circuit in *Kramer* predicted that the Pennsylvania Supreme Court will adhere to the traditional, common law principle that equity will not enjoin a defamation, especially when a party has an adequate remedy at law in the form of money damages.")

Plaintiff student athlete wrestler will only lose one year of PIAA post-season competition. The 7th grade Plaintiff student athlete wrestlers will not be affected by the post-season ban as it will be lifted by the time they enter 9th grade.

The 10th and 11th grade Plaintiff student athlete wrestlers will be barred from post-season competition for the full two years. Nevertheless, the Plaintiff student athlete wrestlers can compete in the wrestling regular season, practice with their team, participate in any other sport at Bishop McCort, and are able to fully participate in non-school competitions and events outside of the PIAA, many of which are attended and/or monitored by college recruiters.

However, Plaintiffs argue the PIAA post-season championship competition is an unparalleled critical step to obtaining scholarship opportunities to wrestle at the college level, and subsequently, obtaining NIL endorsements. Unlike the non-PIAA championships and competitions the Plaintiff student athlete wrestlers continue to compete in, the PIAA post-season championships are folkstyle wrestling, which is the same form of wrestling practiced by colleges and universities. Plaintiffs contend therefore that the PIAA post-season championships provide the gold standard for college recruiters (ECF No. 41 at ¶94). Additionally, student athlete wrestlers do not have to pay additional fees or travel to compete in the PIAA championships. Specifically, as to the 8th graders, Plaintiffs also argue they would be irreparably harmed by the loss of the opportunity to compete at, and win, four years of PIAA post-season championships.

Ultimately, this evidence does not distinguish the two-year PIAA post-season championship ban from the well-established precedent that the loss of such athletic opportunities does not constitute irreparable harm. Pennsylvania courts and district courts in this Circuit have repeatedly held that ineligibility for participation in interscholastic athletic competitions alone does not constitute irreparable harm. *See Dziewa v. Pa. Interscholastic Ath. Ass'n*, 2009 U.S. Dist. LEXIS 3062, at * 17-18, 2009 WL 113419 (E.D. Pa. Jan. 16, 2009) (loss of eligibility for entire

season was not irreparable harm); *Sharon City Sch. Dist. v. Pa. Interscholastic Ath. Ass'n*, 2009 U.S. Dist. LEXIS 13037, at *4-8, 2009 WL 427373 (W.D. Pa. 2009) (inability to play in post-season PIAA playoff game was not irreparable harm); *Mattison v. E. Stroudsburg Univ.*, No. 3:12-cv-2557, 2013 U.S. Dist. LEXIS 52579, at *16-17 (M.D. Pa. Apr. 10, 2013) (one year ban from college baseball team and possible consequences to career as professional baseball player was not immediate, irreparable harm); *Cruz v. Pennsylvania Interscholastic Ath. Ass'n Inc.*, 2000 U.S. Dist. LEXIS 17521, *1 (E.D. Pa. Nov. 20, 2000) (no irreparable harm where student was "limited in his participation in high school athletics rather than barred from it entirely" and could still practice with his team, dress in uniform and attend competitions); *Revesz*, 798 A.2d at 836 (Pa. Commw. Ct. 2002) ("The fact that a student is determined ineligible to play interscholastic sports for one year does not necessarily translate into a loss of opportunity to attain college scholarships."); *A.M. v. Pa. Interscholastic Ath. Ass'n*, 2020 U.S. Dist. LEXIS 182145, at *12 ("loss of these opportunities [ability to participate in District 10 PIAA Championships], while no doubt immensely disappointing to the [p]laintiffs, does not constitute the type of harm that is deemed 'irreparable' for purposes of obtaining the extraordinary remedy of injunctive relief.").

Plaintiffs rely exclusively on the testimony of Arizona State University Assistant Wrestling Coach Lee Pritts to contend college scholarship opportunities and endorsements are directly jeopardized by not competing at the PIAA post-season championship. The Court finds this alleged harm is entirely too speculative, and at best, establishes only a risk of irreparable harm. *See ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) ("Establishing a risk of irreparable harm is not enough."). The Third Circuit has expressly instructed that a district court cannot issue an injunction to eliminate the possibility of future injury. *See Continental Group, Inc. v. Amoco Chem., Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). An injunction can only issue after the presentation of evidence showing "immediate irreparable injury" or "a presently

existing actual threat." *Id.* Plaintiffs' argument that failure to participate in the PIAA post-season championship, which the student wrestlers must first qualify for, would result in loss of college scholarships and NIL endorsements the Plaintiff student athlete wrestlers may receive when, or if, they wrestle at the college level, is entirely conjectural and is not a basis for the Court to issue an injunction.

As to the two-year ban on coaching imposed on Bassett, Plaintiffs did not offer any evidence as to Bassett's irreparable harm at the preliminary injunction hearing, but assert in their post-hearing brief the ban causes a loss of coaching salary, stigmatizes and causes serious harm to his reputation, and impairs future prospects of employment as a wrestling coach at a PIAA school, as well as causes him embarrassment and humiliation (ECF No. 41 at ¶101).  A litigant seeking injunctive relief must "articulate and adduce proof of actual or imminent harm which cannot otherwise be compensated by money damages…to sustain its substantial burden of showing irreparable harm." *Frank's GMC Truck Ctr., Inc.*, 847 F.2d at 102-03 (3d Cir. 1988).  "Damage to [a plaintiff's] name and reputation" is typically insufficient to require a grant of injunctive relief where a plaintiff is "merely impaired", rather than "potentially barred" from obtaining employment in his field, causing "extreme deprivation." *See Morton v. Beyer*, 822 F.2d 364, 372 n.13 (3d Cir. 1987).

In this case, Plaintiffs have failed to show Bassett's claims relating to his coaching salary and reputation cannot be remedied through money damages, and Bassett is therefore not entitled to injunctive relief.  He did not offer any evidence that Bishop McCort or any other school has or will deny his employment as a teacher because of the sanctions.  The two-year coaching ban does not prevent Bassett from being employed by Bishop McCort as the STEM teacher or from operating his wrestling and fitness businesses.  Bassett has not shown that he is barred from obtaining future employment, continuing his current employment or that he otherwise will face

31

immediate, irreparable harm without the issuance of an injunction, and therefore, the Court will not grant his request for such extraordinary relief.

Lastly, insofar as Plaintiffs contend the Court may excuse Plaintiffs from demonstrating they will suffer irreparable harm by demonstrating the PIAA violated Pennsylvania's Act 91 legislation, as discussed above, Plaintiffs failed to demonstrate the PIAA violated any part of Act 91.

## IV.    Conclusion

A party seeking a preliminary injunction "must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179 (3d Cir. 2017). The Court finds Plaintiffs have failed to satisfy their burden as to these first two factors, and accordingly, Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) is hereby DENIED. An appropriate order will follow.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM BASSETT, Individually and | ) | |
| as Parent and Natural Guardian of B.B., | ) | |
| Minor, JOHN and ASHLEY MILLER, | ) | |
| Individually and as Parents and Natural | ) | |
| Legal Guardians of E.G., M.G. & M.M., | ) | |
| Minors, BRENT and BRIDGET CONKLIN, | ) | |
| Individually and as Parents and Natural | ) | |
| Legal Guardians of T.C., Minor, | ) | Civil Action No. 3:22-cv-6 |
| JOHN and MICHELLE MCMULLEN, | ) | Judge Stephanie L. Haines |
| Individually and as Parents and | ) | |
| Natural Legal Guardians of O.M., Minor, | ) | |
| JEREMY SPONTAK, Individually | ) | |
| and as Parent and Natural Legal Guardian of | ) | |
| J.S., Minor, BENNY and TAMMY BUTLER, | ) | |
| Individually and as Parents and Natural | ) | |
| Legal Guardians of J.B. & J.B., Minors, | ) | |
| PATRICK and VALERIE CARFLEY, | ) | |
| Individually and as Parents and Natural | ) | |
| Legal Guardians of A.R. & A.C., Minors, | ) | |
| AARON and ALMA RODGERS, | ) | |
| Individually and as Parents and Natural Legal | ) | |
| Guardians of A.R., Minor, HOWARD FORREST, | ) | |
| Individually and as Parent and Natural | ) | |
| Legal Guardian of J.F., Minor, SHANNON | ) | |
| HERRING, Individually and as Parent and | ) | |
| Natural Legal Guardian of S.H., Minor, and | ) | |
| SYLVIA NORONHA, Individually and as | ) | |
| Parent and Natural Legal Guardian of | ) | |
| S.N., Minor, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PENNSYLVANIA INTERSCHOLASTIC | ) | |
| ATHLETIC ASSOCIATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER</u>**

AND NOW, this 11th day of February, 2022, for the reasons set forth in the accompanying

Opinion, IT IS HEREBY ORDERED that Plaintiffs' Motion for Preliminary Injunction (ECF No.

2) is DENIED.

Stephanie L. Haines
United States District Judge